UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRY J. DIER,

                          Plaintiff,

    v.                                              **DECISION AND ORDER**
                                                           13-CV-502S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

    1.    Plaintiff, Terry Dier, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act").

    2.    Alleging disability due to back pain beginning April 1, 2007, Dier applied for Social Security benefits on September 13, 2010. The Commissioner of Social Security ("Commissioner") denied that application, and as result, Dier requested an administrative hearing. He received that hearing before ALJ William E. Straub on May 15, 2012. The ALJ considered the case *de novo*, and on July 3, 2012 issued a decision denying Dier's application. Dier filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action on May 13, 2012, challenging Defendant's final decision.[1]

    3.    On March 7, 2014 the Commissioner and Dier both filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing concluded at the end of April, at which time this Court took the motions under review. For

---

[1] The ALJ's July 3, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

the following reasons, the Commissioner's motion is granted and Dier's is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings: (1) Dier has not engaged in substantial gainful activity since September of 2008 (nonetheless, the ALJ considered

"the entire period in the evaluation process") (R. 16);[2] (2) Dier suffers from low back pain, a severe impairment (id.); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 17); (4) he cannot perform past work but he retains the residual functional capacity ("RFC") to perform light work as defined in the regulations (id.); and (5) there are jobs that exist in significant numbers in the national economy that he can perform. (R. 20.) Ultimately, the ALJ concluded that Dier was not under a disability, as defined by the Act, from his onset date through the date of the decision. (Id.)

9.   Dier raises several objections to the ALJ's finding. Each that require discussion will be addressed below.

10.   First, Dier contends that the ALJ erred by failing to engage in any meaningful analysis at Step 3. At Step 3, the ALJ found that "the evidence does not show an impairment meeting the requirements of any impairment listed in section 1.00, particularly listing 1.04." (R. 17.)

To satisfy Listing 1.04, Dier must establish that he suffers from a disorder of the spine. The regulations provide:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss

---

[2]Citations to the underlying administrative record are designated "R."

and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.04(A)-(C).

11. Although Dier argues that there is evidence that he meets the requirements of subparts "A" and "C" of Section 1.04, and that therefore the ALJ should have engaged in a more thorough analysis of disability at this step, Dier points to no evidence that he suffered from a "disorder of the spine." He notes simply that one MRI from 2008 showed that there is "contact with a nerve root;" that there is "mild contact with the thecal sac"; and that there is "possibly some slight contact with the right S1 nerve root." But this does not demonstrate that any nerve roots were "compromise[d]," and a later MRI revealed no root involvement. See Pearson v. Colvin, No 4:12-CV-23-FL, 2013 WL 3243550, at *10 (E.D.N.C. June 26, 2013) (finding that although an MRI showed "contact," "[t]he MRI does not contain medical statements confirming the existence of compression"). Further, there is no evidence that Plaintiff had motor loss, muscle weakness, or sensory or reflex loss. And "there is no evidence of spinal canal stenosis." (R. 280.) The ALJ's finding, while brief, was therefore not in error.

12. Dier next argues that the ALJ's RFC was not based on substantial evidence.

5

This Court cannot agree.

13.     There is no doubt that Dier suffers from back pain. The question for this Court is whether, despite that pain, the ALJ's conclusion that he can perform light work is was based on substantial evidence. This Court finds that it is.

Light work involves:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

14.     The only evidence on record suggesting that Dier could not perform this type of work comes from his own testimony. And while that cannot be summarily discounted, the two physicians who examined Dier and reported their findings both find, at most, a moderate limitation. Dr. Pawlowski, Dier's treating physician, in fact found "no evidence of limitations" [in] walking [or] standing." (R. 268.) Dr. Dave, a consultive examiner, found only "mild to moderate" limitations in "prolonged sitting and standing." (R. 253.) There is simply no medical opinion that suggests Dier is disabled. Indeed, the ALJ is entitled to rely not only on what the record says, but "also on what it does not say." See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983). On this basis, this Court cannot find that the ALJ's conclusion was in error.

15.     Dier attempts to find legal error in several facets of the ALJ's decision. The medical opinions cannot be relied on, he argues, because they are too vague. He also

6

contends that the ALJ failed to account for his non-exertional limitations.

16.  As for the first contention, while the treating physician and consultive examiner used terms like "mild" and "moderate" this does not automatically render their opinions void for vagueness. See Tudor v. Comm'r of Soc. Sec., No. 12-CV-2795 SJF, 2013 WL 4500754, at *12 (E.D.N.Y. Aug. 21, 2013) (internal quotation marks omitted) ("[T]he mere use of the phrase 'moderate limitations' does not render a doctor's opinion vague or non-substantial for purposes of the ALJ's RFC determination."). Instead, when, as here, those opinions are based on clinical findings and an examination of the claimant, the conclusion can serve as an "adequate basis" for the ALJ's ultimate conclusion. See id.

17.  Second, there is no reversible error in the ALJ's RFC merely because Dr. Pawlowski found a moderate limitation in bending and Dr. Dave found that Dier has "mild to moderate limitations" in "repetitive squatting, crouching, and kneeling." (R.253.) Dier argues that the ALJ failed to account for these non-exertional limitations when formulating his RFC and that he was therefore required to consult a vocational expert.

18.  But whatever limitations in this area Dier might have, Dr. Dave found them limited to "repetitive" behaviors and Dr. Pawlowski found only a moderate limitation in "bending" and "climbing." This does not erode the occupational base for light work. Social Security Ruling 85–15 provides "if a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." As a sister court has found, "The postural limitations reported by the State agency doctors – occasional climbing, balancing, stooping, kneeling, crouching, and crawling – are not inconsistent with light work." Carlson v. Barnhart, No. 3:05CV1584(SRU)(WIG), 2006 WL 2926818, at *15 (D. Conn. Aug. 30, 2006). Like the

Carlson court, this Court "finds no error in the ALJ's use of the grid given the Plaintiff's non-exertional limitations." Id.

19.     Finally, this Court finds no reversible error in the ALJ's assessment of Dier's credibility. "The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). A claimant's testimony is only credited "to the extent that [his alleged limitations] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4).

20.     The ALJ found that Dier's "impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] [RFC] assessment." (R. 18.) Dier argues that the ALJ's reference to the RFC constitutes error. Indeed, courts in this District and beyond have found that it is error to merely compare a claimant's statements regarding her symptoms to the ALJ's own RFC assessment. See Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012); Caternolo v. Astrue, No. 6:11-CV-6601 MAT, 2013 WL 1819264 (W.D.N.Y. Apr. 29, 2013); Smollins v. Astrue, No. 11–CV–424, 2011 WL 3857123, at *11 (E.D.N.Y. Sept. 1, 2011). As courts have noted, "'The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms.' Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility." Caternolo, 2013 WL 1819264 at *12 (quoting Otero v. Colvin, No. 12–CV–4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar.19, 2013)). But this Court finds that whatever error

may be present is largely based on semantics and not cause for reversal. Although the passage, in itself, implies that ability to work is determined first and is then used to determine the claimant's credibility, which would "get things backwards," see Bjornson, 671 F.3d at 645, as other courts have found, "[r]ead in context, [] this statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility." Briscoe v. Astrue, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012). Instead, because "the ALJ's decision discusses in detail the aspects of [Dier's] testimony that were contradicted by other evidence in the record, it is [] clear that the ALJ" fully assessed Dier's credibility and did not simply discount any allegations that were not compatible with his RFC determination. See id.; see also Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) (finding no error where the ALJ determined that the intensity and persistence of the claimant's symptoms was not credible "to the extent it was inconsistent with the light work residual functional capacity assessment") (modifications omitted).

21. What is more, the evidence supports the ALJ's assessment. As ALJ Straub noted, Dier's admitted activities since the alleged onset date are not inconsistent with an ability to perform light work, and, in the end, it is the ALJ's prerogative to weigh "the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). This Court finds no reversible error in that determination.

****

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15)

is GRANTED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: June 22, 2014
      Buffalo, New York

                                            <u>/s/William M. Skretny</u>
                                            WILLIAM M. SKRETNY
                                                  Chief Judge
                                         United States District Court